Robert ANNEAR, Appellant,

v.

STATE of Iowa, Appellee.

No. 89–230.

Supreme Court of Iowa.

April 18, 1990.

Rehearing Denied May 23, 1990.

As Corrected May 30, 1990.

Thomas Mann, Jr. of Mann & Mann, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Scott M. Galenbeck, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and NEUMAN, JJ.

CARTER, Justice.

Plaintiff, Robert Annear, appeals from an adverse judgment in a civil rights action tried to a jury.[1] Plaintiff alleged that he was the victim of discrimination based on physical disability. His claims related to both termination from employment with the state and the subsequent failure to rehire him. At the conclusion of the trial, the jury found by special verdict that plaintiff had failed to establish the alleged discrimination by a preponderance of the evidence. The district court entered judgment dismissing plaintiff's claim, and this appeal followed. After considering the arguments of the parties, we affirm the judgment of the district court.

Plaintiff worked as maintenance worker at Camp Dodge, a facility operated by the Iowa Department of Public Defense, from 1972 until June 29, 1981. For several years prior to the latter date, he was assigned to "light duty" as a result of a back injury. On February 21, 1981, plaintiff applied for long-term disability benefits under his state insurance program and social security disability benefits. He was granted long-term disability benefits but did not receive social security disability benefits. The payment of the long-term disability benefits commenced on June 30, 1981, the day following his termination as an employee of the

---

1. Plaintiff's claim was predicated on Iowa Code § 601A.6(1)(a) (1981).

state.[2]

In August of 1981, plaintiff had back surgery and thereafter his physical condition markedly improved. On November 19, 1981, he returned to Camp Dodge and requested that he be returned to his former position of Maintenance Worker II. He presented an unsigned release card from his treating physician indicating that he was able to return to work. The personnel officer at Camp Dodge requested that plaintiff provide additional assurance that he was physically able to return to his former job. This request was followed up by a letter to plaintiff from the personnel officer specifying the job duties and physical requirements which the job entailed and requesting a physician's release specifically relating to these requirements.

On December 10, 1981, plaintiff's physician provided the personnel officer with a release stating that plaintiff could return to work on January 4, 1982, and was physically able to perform the tasks outlined in the letter. On January 4, plaintiff returned to Camp Dodge. At that time, the personnel officer again advised him that the reinstatement rights of persons previously terminated for long-term disability were only to be listed on the merit register for that person's former position without retaking merit examinations. Plaintiff was told that, other than this limited concession, he had to compete with other applicants for the position on an equal opportunity basis.[3] Plaintiff was also told that any vacancies in Maintenance Worker II positions would not be filled at that time for budgetary reasons. Evidence was presented at the trial that no Maintenance Worker II positions were filled from that time until early in 1985.

In March of 1982, plaintiff applied for a job as a custodial worker (a lower job classification). Plaintiff and other applicants were considered under the agency's standard merit evaluation. An applicant with a higher evaluation rating than plaintiff was hired.

On August 5, 1982, plaintiff filed a complaint with the Iowa Civil Rights Commission alleging that the State was guilty of discrimination in employment based on disability. On August 4, 1983, that agency issued a right-to-sue letter regarding plaintiff's claim. The present action was commenced the following day.

In addition to his claims under chapter 601A, plaintiff's action, as originally filed, included counts alleging that, in failing to reinstate him to his former position, the State (a) violated the collective bargaining agreement in force with his bargaining unit, (b) violated the provision of Iowa Code section 79.2 (1981) pertaining to absence from work for health reasons, and (c) breached an implied covenant of fair dealing. These claims were dismissed by the district court on October 20, 1986, in a ruling on pretrial motions. Later, in another ruling, the district court dismissed the civil rights count on statute-of-limitations grounds, and a final judgment was entered. In an appeal from that judgment, this court in *Annear v. State*, 419 N.W.2d 377 (Iowa 1988) (hereinafter cited as *Annear I*) reversed the dismissal of the civil rights count but did not reinstate any of the other counts which had been dismissed.

After remand to the district court following the decision in *Annear I*, the district court held a bifurcated trial. In the trial of the jurisdictional issues involving the statute of limitations, the jury found in plaintiff's favor. It then considered his claim on the merits and denied relief. Other significant facts which bear upon our decision of this appeal are stated and considered in our discussion of the legal issues which are presented.

I. *Issues Which Have Previously Been Eliminated.*

■ At the outset, we reject any attempt by plaintiff in the present appeal to assert

---

**2.** Plaintiff contends that under a state personnel policy his termination should not have been finalized until a later date. The State disputes this claim. We need not deal with this issue because it essentially involves a breach of contract rather than a civil rights violation.

**3.** This interpretation of personnel policies was ultimately adopted by the district court in rulings entered in this litigation.

an interpretation of his contract of hire different from that adopted in the district court's October 20, 1986, order. That order is controlling on law-of-the-case grounds. *See Wolfe v. Graether,* 389 N.W.2d 643, 651 (Iowa 1986) (decision on a prior appeal is controlling for purposes of further proceedings in both the district court and subsequent appeals); *Omaha Bank for Coops. v. Siouxland Cattle Coop.,* 305 N.W.2d 458, 463 (Iowa 1981) (same). This determination is significant because it bears on other legal issues asserted by plaintiff in the present appeal.

## II. *Issues Sought to be Added by Amendment.*

█ After the case was remanded to the district court following the prior appeal, plaintiff requested permission to amend his petition to add a count alleging that the circumstances of his discharge were contrary to public policy and, under this court's decision in *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558 (Iowa 1988), should be actionable in tort. The district court denied this request without elaboration as to the grounds for that ruling. Plaintiff now asserts that this was an abuse of discretion.

We find no abuse of discretion or legal error in the court's ruling on the request to amend. That request came more than five years after the original petition was filed. Moreover, we believe it was implicit in our decision in *Annear I* that the case was remanded solely for purposes of trying the civil rights claim.[4]

## III. *The Statute-of-Limitations Issue.*

The State, by cross-appeal, contends that, notwithstanding the jury's special verdict on this question, plaintiff's claims are based on acts which occurred more than 180 days prior to the filing of his complaint with the Iowa Civil Rights Commission. This circumstance, the State asserts, prevents both the commission and the court from considering the alleged civil rights violation as a result of a jurisdictional stat-

ute of limitations provided in Iowa Code section 601A.15(12) (1981). Plaintiff counters by asserting that the statute-of-limitations claim should have been decided in his favor as a matter of law.

In the bifurcated trial proceeding, the district court, by special interrogatory, submitted the question of whether plaintiff perceived that he was being discriminated against prior to February 5, 1982 (a date 180 days prior to the filing of plaintiff's complaint with the civil rights commission). The jury answered this special interrogatory in the negative. In the trial on the merits which followed, the court submitted claims involving both discrimination in discharge (based on acts antedating the filing of the civil rights complaint by more than 180 days) and failure to rehire (based on acts occurring within the 180–day period).

█ On the appeal in *Annear I,* we reversed the district court's summary judgment for the State on the statute-of-limitations issue based on the concept of a continuing violation. That ruling was based on the record made on the summary judgment motion. We need not determine whether, based on the evidence which was actually adduced at the trial, the continuing violation doctrine will save plaintiff's claim of discrimination in discharge from the statute of limitations. Resolution of plaintiff's discriminatory discharge claim is more readily based on the ground that, under the undisputed evidence, there was no discrimination practiced with respect to his separation from employment.

It appears without dispute that plaintiff's separation from employment occurred because of a well-documented physical disability. This disability prevented plaintiff from pursuing the requirements of his job, even after the State had taken measures to accommodate his physical limitations. No claim should have been submitted to the jury involving a discriminatory discharge. Consequently, we need not consider plaintiff's assignments of error pertaining to

4. The State also urges persuasively that the breach of public policy claim sought to be added by amendment sounds in tort and was never

presented to the State Appeals Board as required by Iowa Code § 25A.5 (1981).

the discriminatory discharge portion of his claim.

■ With respect to the portion of plaintiff's claim alleging discrimination in rehiring, plaintiff is correct in contending that, as a matter of law, the bar of section 601A.15(12) does not apply. The State relies on the case of *Burnam v. Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir.1985), where the court stated:

> [A] failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in the refusal to rehire itself, cannot resurrect the old discriminatory act. Otherwise, a potential plaintiff could always circumvent the limitations by reapplying for employment.

*Id.* (citations omitted). Although we do not disagree with the basic principle applied in the *Burnam* case, we believe that principle is inapplicable in the present case. Because we have determined that there was no act of discrimination with respect to plaintiff's discharge, any discrimination in rehiring would have been the first act to trigger the 180-day limitation period. The material acts by the State with respect to the rehiring issue all occurred within 180 days of the filing of the complaint with the commission.

IV. *Evidentiary and Substantive Issues with Respect to Reasonable Accommodation.*

■ Plaintiff asserts both evidentiary and substantive challenges to the trial court's treatment of the issue of reasonable accommodation. His evidentiary challenges relate to the trial court's refusal to admit testimony by an attorney for the bargaining unit of plaintiff's union concerning statements made to that attorney with respect to plaintiff's claim. These statements, allegedly made by an employee in the State Comptroller's Office, pertained to the duty of the State to reasonably accommodate a disabled employee. The State contends that this testimony was properly excluded because of its hearsay nature and also because the proffered evidence pertained to plaintiff's breach-of-contract claim which was no longer in the litigation.

On our review of the record, we conclude that the State is correct as to both of its contentions. The proffered evidence was facially hearsay. Plaintiff made no foundational showing that the declarant was speaking within the scope of that person's agency in order to establish a vicarious admission under Iowa Rule of Evidence 801(d)(2)(D). Moreover, there are no viable issues in this civil rights action involving reasonable accommodation. The State has never contended that plaintiff was physically unable to perform the requirements of the job for which he was not hired. It based its failure to hire him on grounds of merit qualification. In keeping with this scenario, plaintiff's assertion of a discriminatory discharge was predicated on a theory that he was able to resume work without any accommodation of job requirements. These circumstances distinguish the present case from *Frank v. American Freight Systems, Inc.*, 398 N.W.2d 797, 802–03 (Iowa 1987), where we applied a reasonable accommodation requirement with respect to a back disability. In *Frank*, the employer clearly did base its decision to discontinue employment on a belief that a back injury precluded the employee from performing the job requirements.

V. *Objections to Instruction No. 13.*

■ Plaintiff asserts that the district court erred in giving Instruction No. 13, which advised the jury as follows:

> Mr. Annear, as an employee of the State of Iowa, who had either resigned or was separated from his employment for reasons other than good cause for separation, was eligible for reinstatement to the class of job formerly held by him, or a comparable class, or to a lower class until January 4, 1984.
>
> There is no provision in the law which requires the State to automatically reinstate an employee who had applied for and been granted long-term disability benefits. The State of Iowa is responsible for affording plaintiff the same eligibility for reinstatement given to other employees who are granted long-term

disability and later choose to apply for reemployment.

If you find that plaintiff was afforded the eligibility for reinstatement provided by the State, without regard for disability, you must find in favor of the defendant.

Plaintiff argues that this instruction improperly engages in factual determinations which were the province of the jury. We disagree with this contention.

The language contained in Instruction No. 13 accurately states plaintiff's contractual right to reinstatement as established in the prior ruling of the court dismissing his breach-of-contract claim. That ruling stood as the law of the case.

VI. *Instructions on the Burden of Proof.*

■ Plaintiff's next assignment of error contends that the district court erred in giving Instruction No. 12, which required him to disprove defendant's evidence of a nondiscriminatory reason for not rehiring plaintiff. The portion of the instruction applicable to this argument reads as follows:

> The burden of proof is on plaintiff to disprove this contention. In other words, for you to return a verdict in plaintiff's favor, you must find that plaintiff established, by a preponderance of the evidence, that plaintiff was equally or better qualified than the applicant hired for the position and that the reasons given by defendant as to why the plaintiff was not hired were false.

This theory of the case appeared in a separate instruction and was also incorporated into the marshaling instruction.

The procedure in discrimination cases, including disability discrimination, is as follows: (1) the complainant must first establish a prima facie case of discrimination; (2) the employer may then show a legitimate, nondiscriminatory reason for its conduct; and (3) the complainant may then attack the reason as only a pretext for discrimination, or one unworthy of belief. *Frank*, 398 N.W.2d at 800. Defendant offered evidence that plaintiff was not as well qualified as the other applicants for the position for which he was rejected. It was established that plaintiff's right to reinstatement at this point was only to enjoy the same opportunity as anyone else applying for the job. For purposes of establishing that the reason given for not hiring him was pretextuous, plaintiff bore the burden of persuasion on whether he was at least as well qualified as the person who was eventually hired for the position. *See Woodbury County v. Iowa Civil Rights Comm'n*, 335 N.W.2d 161, 165 (Iowa 1983).[5]

VII. *Objection to Instructions Defining Handicap or Handicapped Person.*

■ Plaintiff asserts that the trial court's instructions defining handicap or handicapped person were erroneous and prejudiced him in establishing the theory on which his disability discrimination claim was based. Although the State has at all times asserted that it believed plaintiff was recovered from his back condition and that its refusal to rehire him was based on the relative merit of the competing applicants, plaintiff brands this contention as pretextuous. He argues that the real reason for not hiring him was a perceived physical disability. He presents his claim as one in which the State's representatives in the hiring process incorrectly believed that the disability which caused his separation from employment in 1981 continued to exist in March of 1982.

Based on this premise, plaintiff contends the trial court should have defined handicap or handicapped person in the instructions to include those persons who are regarded as being handicapped although not in fact deserving that characterization. Plaintiff offered a proposed instruction incorporating that concept which was refused. The trial court otherwise defined handicap as follows:

> The terms "disability" or "handicap," under Iowa law, refer to a physical condi-

---

5. Plaintiff also argues that the marshaling instruction required him to establish that he was better qualified than the other applicants for the job. The instruction stated that plaintiff must show that he was "as well qualified or better qualified" than the other applicants for the job. As such, it was not a misstatement of the law.

tion which constitutes a substantial handicap and which is unrelated to the person's ability to perform in a reasonably competent and satisfactory manner jobs or positions which are available to him or her.

Plaintiff bases his challenge to the foregoing instruction on regulations promulgated by the Iowa Civil Rights Commission to aid in administering chapter 601A. One of these regulations, 240 Iowa Admin.Code 6.1(1), defines a "substantially handicapped person" as

[t]he term "substantially handicapped person" shall mean any person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment.

Another subparagraph of this regulation provides:

The term "is regarded as having an impairment" means:

a. Has a physical or mental impairment that does not substantially limit major life activities but that is perceived as constituting such a limitation;

b. Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

c. Has none of the impairments defined to be "physical or mental impairments," but is perceived as having such an impairment.

240 Iowa Admin.Code 6.1(5) (emphasis added).[6] Both of these provisions were discussed and applied in Brown v. Hy-Vee Food Stores, Inc., 407 N.W.2d 598, 600 (Iowa 1987). Plaintiff relies on the italicized portion of the latter regulation in claiming entitlement to an instruction on perceived disability.

Our task in applying this regulation to the present situation is complicated by the

fact that we are considering a proposed alternative scenario to an allegedly pretextuous reason for not hiring plaintiff. The issue thus becomes whether, if the State did not hire plaintiff because it believed he was physically unable to do the work and was wrong in that assessment, this error of judgment would constitute an unlawful discrimination in hiring under section 601A.6(1)(a). We believe it does not. To literally apply the language of subparagraph c of 240 Iowa Administrative Code 6.1(5) to this set of facts would extend the scope of an employment discrimination claim beyond the breadth of the statute by which such claims have been created. Agency action in promulgating a rule may not exceed its statutory authority. Sommers v. Iowa Civil Rights Comm'n, 337 N.W.2d 470, 475 (Iowa 1983).

In order for the definition contained in subparagraph c of these regulations to be given effect under the act, it must be limited to situations involving a categorical organic disorder of the body. Cf. Sommers, 337 N.W.2d at 476. The definition may not be extended to differences of opinion over the degree of recovery from a disabling injury, notwithstanding a lack of reasonable basis for the employer's belief. The district court did not err in rejecting plaintiff's proposed instruction on perceived disability.[7]

VIII. Other Issues.

Plaintiff also raises issues in which he challenges other instructions given by the trial court and challenges the trial court's refusal to rule that he had established his case as a matter of law. We have considered all issues presented and find no ground for reversal. The judgment of the district court is affirmed.

AFFIRMED.

6. These provisions of 240 Iowa Administrative Code 6.1 have been renumbered as 161 Iowa Administrative Code 8.26.

7. Plaintiff suggests that the trial court's failure to include the concept of perceived disability in the instructions to the jury was the equivalent of directing a verdict in favor of the State. If he is correct in this assessment, this does not demonstrate that he was legally prejudiced. It only indicates that in sending the issue to the jury, the trial court was acting more favorably toward plaintiff's position than was warranted.